UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLIE LYNN SZUTENBACH,<br><br>    Petitioner,<br><br>v.<br><br>GUILLERMAINA HALL,<br><br>    Respondent. | Case No. 05-CV-1117-BTM (JMA)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE ON PETITION FOR WRIT OF HABEAS CORPUS** |

**I.  Introduction**

Petitioner is a former state prisoner[1] who was sentenced to a term of eight years and eight months after being convicted by jury of the following:

Count 1 - grand theft of personal property from Dr. Richard Richley (total loss exceeding $150,000)(CA Penal Code §§ 487.1, 487(a) & 12022.6(b));

Count 2 - fraudulent appropriation by clerk, agent, or employee in excess of $400 from Dr. Richard Richley (CA Penal Code 508);

---

[1] According to Respondent, Petitioner was released from prison on August 19, 2005. (Answer [Doc. No. 26] at 1.)

Count 3 - grand theft of personal property from Roberto Robaina (total loss exceeding $150,000)(CA Penal Code §§ 487(a) & 12022.6(b));

Count 4 - fraudulent appropriation by clerk, agent, or employee in excess of $400 from Roberto Robaina (CA Penal Code § 508); and

An "Aggravated White Collar Crime Enhancement" (CA Penal Code § 186.11(a)(2)).[2]
(Resp.'s Lodgment 1, Clerk's Transcript ("CT") 579-580, 689-693.) The jury made a special finding that, as to Counts 1 and 2 (the thefts from Dr. Richard Richley), Petitioner acted pursuant to a general overall plan. (CT 694.) On May 15, 2001, Petitioner was sentenced to a term of eight years and eight months. (CT 776-777.)

On April 27, 2005, Petitioner filed this federal Petition in the U.S. District Court for the Central District of California. The Petition was subsequently transferred to this district. Petitioner alleges two claims in the Petition. First, she claims that California's four-year statute of limitations for grand theft should have barred the prosecution of Counts 1 & 2 (the thefts from Dr. Richard Richley). Second, she claims that she was denied effective assistance of counsel on appeal when counsel failed to pursue her direct appeal to the California Supreme Court. (Petition [Doc. No. 1] at 5.)
//

---

[2] Petitioner committed two or more related felonies, a material element of which was fraud or embezzlement, which involved a pattern of related felony conduct involving the taking of more than $500,000. (CA Penal Code § 186.11(a)(1) & (2).)

## II. **Procedural Background**

After Petitioner was sentenced on May 15, 2001, Petitioner's appellate attorney filed an appeal in the California Court of Appeal. The appeal raised the statute of limitations issue raised in this federal Petition. The Court of Appeal affirmed the judgment on April 21, 2003.[3] (Resp.'s Lodgments 2-4.) Appellate counsel failed to file a petition for review in the California Supreme Court. Petitioner retained new appellate counsel, and he filed a petition for writ of habeas corpus in the California Supreme Court, raising (among others) the claims raised in this federal Petition. The Supreme Court denied the petition without comment. (Resp.'s Lodgments 5-6.)

Petitioner filed this federal Petition on April 27, 2005. On July 19, 2005, Respondent filed a Motion to Dismiss the Petition, contending that it had been filed outside the one-year statute of limitations set out in the Antiterrorism and Effective Death Penalty Act of 1996. Petitioner opposed the motion, and Respondent replied. After receiving a supplemental declaration from Petitioner, on February 1, 2006 this Court filed a Report and Recommendation finding and recommending that the Motion to Dismiss be denied. This Court specifically found that the one-year statute was equitably tolled for a period of 70 days due to appellate counsel's "egregious conduct in assuring Petitioner on more than one occasion that she intended to file the petition for review and thereafter failing to do so." (Doc. No. 20 at 8.) This period of equitable tolling rendered Petitioner's federal

---

[3] Apparently, the Court of Appeal's decision was incorrectly file-stamped "April 21, 2002" when it was in fact filed on April 21, 2003. (See Resp.'s Lodgment 4.)

Petition timely filed. The Honorable Barry Ted Moskowitz adopted the Report and Recommendation and denied the Motion to Dismiss the Petition on March 14, 2006. [Doc. Nos. 4-23.]

Respondent then filed an Answer to the Petition, and Petitioner filed a Traverse. (Doc. Nos. 26 & 30.)

### III. Factual Background

The facts relevant to the issues presented in this Petition are not in dispute, and this Court presumes correct the factual determinations by state courts. See 28 U.S.C. § 2254(e)(1). "The Richley thefts" were summarized by the California Court of Appeal as follows:

> [¶] Szutenbach operated a bookkeeping service under the fictitious business name Szutenbach & Associates. From 1993 to 1995, Szutenbach did bookkeeping and tax work for Dr. Richard C. Richley, his wife and his fourteen businesses. As part of her services, Szutenbach was responsible for depositing payment checks Richley received from his patients and their insurers, reconciling and transferring funds from Richley's bank accounts and writing checks to his creditors. Szutenbach had custody of Richley's checkbooks and canceled checks for the accounts, was an authorized signatory on one of Richley's accounts with the Bank of America (the BoA account) and had a rubber stamp of Richley's signature. Over time, Richley gave Szutenbach responsibility for negotiating loans, contracts and leases on his behalf and performing work related to litigation involving him or his business.
>
> [¶] Beginning in late 1993, Richley began to experience cash flow problems and his office received complaints from creditors about nonpayment. When Richley questioned Szutenbach about these matters, she provided a variety of explanations that Richley initially accepted. However, in 1994, Richley started questioning Szutenbach's explanations and asked her for the bank statements and canceled checks for his accounts. Szutenbach's office provided Richley with check stubs (some of which were blank), but did not turn over any canceled checks. Suspicious, Richley ordered copies of the canceled checks from the Bank of America and discovered that Szutenbach had written a number of large checks from the BoA account to her business. Richley immediately contacted the bank's security department and ordered microfilm copies of all

>of the canceled checks for all of his accounts.
>
>[¶] By spring 1995, Richley concluded that Szutenbach had embezzled from him.  He stopped using Szutenbach's services and hired accountant Michael Boardman of Considine & Considine to straighten out his financial records.  Richley also withdrew all of his money from the BoA account and began using another account for his business purposes.  Unfortunately, Richley did not close the BoA account and, in August 1995, Szutenbach took patient checks from Richley's office mailbox and deposited them into that account.  Shortly thereafter she wrote a check from the account for $3,400 payable to her credit card company.

(Resp.'s Lodgment 4 at 2-3.)

## IV. Discussion

### A. Standard of review

Federal habeas corpus relief is granted "only on the ground that [the state prisoner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §2254(a).  Mere errors of state law are not cognizable in federal habeas corpus proceedings.  Id.; Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Pulley v. Harris, 465 U.S. 37, 41 (1984).

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") govern this petition, since it was filed after the statute became effective on April 24, 1996.  See Lindh v. Murphy, 521 U.S. 320, 336 (1997). The AEDPA prohibits a federal court from granting a petition of a state prisoner whose claims were adjudicated on the merits in state court, unless the federal court first finds that the state court decision was contrary to clearly established Supreme Court law, or involved an unreasonable application of such law to the facts of the case. 28 U.S.C. §2254(d). The Supreme Court has defined these terms:

>Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a

```
        conclusion opposite to that reached by this Court on a
        question of law or if the state court decides a case
        differently than this Court has on a set of materially
        indistinguishable facts.  Under the "unreasonable
        application" clause, a federal habeas court may grant
        the writ if the state court identifies the correct
        governing legal principle from this Court's decisions
        but unreasonably applies that principle to the facts of
        the prisoner's case.
```

Williams v. Taylor, 529 U.S. 362, 412-413 (2000).  The Supreme Court has also stated that:

```
    …[A]n unreasonable application of federal law is
    different from an incorrect application of federal law.
    …Under §2254(d)(1)'s "unreasonable application" clause,
    …a federal habeas court may not issue the writ simply
    because that court concludes in its independent
    judgment that the relevant state-court decision applied
    clearly established federal law erroneously or
    incorrectly.  Rather, that application must also be
    unreasonable.
```

Id. at 410-411 (emphasis in original).  See also Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

  **B. Petitioner's claim that California's statute of limitations should have precluded the prosecution of Counts 1 and 2 against her is a matter purely of state law and is, in any event, meritless.**

  Petitioner contends that Counts 1 and 2 against her should have been barred by the four-year statute of limitations applicable to grand theft charges.  Specifically, Petitioner argues that Dr. Richley discovered her embezzlement in June 1995, thereupon terminating her employment, and that the statute of limitations accordingly began running at that time.  Thus, according to Petitioner, the statute of limitations for the Richley thefts expired in June 1999.  Because the criminal complaint against Petitioner was not filed until August 9, 1999, Petitioner argues, the charges were brought two months after the statute ran.

Respondent argues, as did the prosecution in the trial court, that Petitioner's overall plan or scheme of embezzlement continued through August 11, 1995, when Petitioner stole patient checks from Dr. Richley's mailbox, deposited the checks into the Bank of America account that Dr. Richley no longer used but had not closed, and then wrote a check to her credit card account. In accordance with this time line, the statute of limitations did not run until August 11, 1999, and Counts 1 and 2 were timely brought against Petitioner.

The Supreme Court of California denied Petitioner's petition for writ of habeas corpus without opinion. (Resp.'s Lodgment 6.) Thus, this Court must "look through" to the California Court of Appeal's decision underlying that denial as the basis for its analysis. See Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991).

In denying Petitioner's petition for writ of habeas corpus, the California Court of Appeal stated:

> [¶] Prosecutions for grand theft must be "commenced within four years after discovery of the commission of the offense, or within four years after the completion of the offense, whichever is later." (Pen. Code, §§ 801.5, 803, subd. (c).)  A person is deemed to have discovered the commission of an offense once he "has knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry." (*People v. Crossman* (1989) 210 Cal.App.3d 476, 480, quoting *People v. Zamora* (1976) 18 Cal.3d 538, 562.)
>
> [¶] Pursuant to what is known as the "*Bailey* doctrine" (*People v. Bailey* (1961) 55 Ca.2d 514 (*Bailey*)), if a defendant commits a series of thefts, she is guilty of but one count of felony grand theft if all the thefts are "motivated by one intention, one general impulse, and one plan ... ." (*In re David D.* (1997) 52 Cal.App.4th 304, 307-308, quoting *Bailey, supra*, 55 Cal.2d at p. 519.)  Although the issue in *Bailey* was whether several instances of misdemeanor (petty) theft committed pursuant to an overall scheme may be cumulated into one felony count of grand theft, subsequent cases applying the *Bailey* doctrine have held

7

> that it is equally applicable to a series of grand thefts committed pursuant to an overall plan or scheme. (*People v. Kronemyer* (1987) 189 Cal.App.3d 314, 364-365; *People v. Sullivan* (1978) 80 Cal.App.3d 16, 18-21; *People v. Brooks* (1985) 166 Cal.App.3d 24, 31.) Whether the wrongful conduct gives rise to one offense rather than a series of offenses is generally a question of fact that turns on the particular circumstances of the case; a defendant may be properly convicted of multiple counts of theft if the evidence shows that the offenses were separate and distinct and were not committed pursuant to a single criminal intention, impulse and plan. (*In re David D., supra,* 52 Cal.App.4th at p. 308.)
>
> A.   Denial of Motion to Dismiss the Richley Counts
>
> [¶] Prior to trial Szutenbach made a motion to dismiss the Richley counts on statute of limitations grounds. The trial court denied the motion without prejudice. On appeal, Szutenbach argues that the court erred in denying her motion because, as a matter of law, her thefts constituted separate offenses rather than part of an overall plan. She cites to cases holding that the *Bailey* doctrine is inapplicable to successive forgeries (*People v. Neder* (1971) 16 Cal.App.3d 846, 852-853) and to multiple instances of Medi-Cal fraud (*People v. Drake* (1996) 42 Cal.App.4th 592).
>
> [¶] Szutenbach's reliance on these cases is misplaced. Although the opinions decline to expand the *Bailey* doctrine to other types of successive crimes, they do not vitiate the application of the *Bailey* doctrine to successive petty or grand thefts, as charged against Szutenbach here. (*People v. Kronemyer, supra*, 189 Cal.App.3d at pp. 364-365; *People v. Sullivan, supra*, 80 Cal.App.3d at pp. 18-21.) In light of the prosecution's theory that the Richley thefts were part of one overall plan, the court did not err in denying Szutenbach's motion to dismiss the Richley counts.

(Resp.'s Lodgment 4 at 6-8.)[4]

Generally, matters relating to state court interpretation of state law do not implicate federal constitutional issues. In

---

[4] In the same vein as Petitioner's argument set forth above, Petitioner also argues that the California courts improperly used the <u>Bailey</u> doctrine to avoid finding that the prosecution violated the statute of limitations, rather than to elevate Petitioner's serial thefts from misdemeanor to felony status (in Petitioner's view, the only proper use of the doctrine). (Traverse [Doc. No. 30] 5-12.)

fact, this Court defers to and is bound by a state court's interpretation of its own laws. Wainwright v. Goode, 464 U.S. 78, 84 (1983). Estelle v. McGuire, supra, 502 U.S. at 67-68. Petitioner has provided no authority to indicate that this case does not fall within that general rule. Moreover, "[a] federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law." Pulley v. Harris, 465 U.S. 37, 41 (1984).

Petitioner's claim deals solely with the interpretation and application of California law, a matter which does not implicate federal constitutional concerns. Moreover, notwithstanding that Petitioner has raised a claim for which federal habeas relief is unavailable, Petitioner's claim is meritless.

### 1. The trial court's factual finding that Petitioner acted pursuant to a general overall plan

At trial, the jury received evidence of the timing and nature of Petitioner's acts of theft and fraud. Dr. Richley was an accounting client of Petitioner from 1993-1995. (Respondent's Lodgment 7, Reporter's Transcript ("RT"), 550-551.) Petitioner was an authorized signer on Dr. Richley's Bank of America account and had a rubber stamp of Dr. Richley's signature. (RT 521, 552, 559-560.) By the summer of 1995, Dr. Richley came to the conclusion that Petitioner had been stealing from him. (RT 410, 589-590.) At that time, Bank of America advised him to file a police report and complaint. (RT 590.)

In June 1995, Dr. Richley withdrew all his money from the Bank of America account and began using another account. (RT 598.) He also terminated Petitioner's employment. (RT 609,

673.) Dr. Richley did not close the Bank of America account, however, and on August 11, 1995, $3,962.39 was deposited into the account. (RT 608.) At about this time, Dr. Richley's office manager told him that his mailbox had been opened and that he was missing patient payment checks. (RT 590.) On August 14, 1995, Bank of America paid a check drawn on the account in the amount of $3,400, signed by Petitioner and made payable to her credit card account. (RT 433-435, 608-609, 984, 1308.) Dr. Richley then hired another accountant, who ultimately determined that the amount of unauthorized checks made payable to Petitioner totaled $800,000.00. (RT 617.)

Based on this evidence, the jury not only found Petitioner guilty of the crimes alleged in Counts 1 and 2 (grand theft and fraudulent misappropriation from Dr. Richley), but made a "Special Verdict" finding as follows:

> We, the jury in the above-entitled cause, having found the defendant LESLIE LYNN SZUTENBACH, guilty of Counts 1 and/or 2 of the Amended Information, further find that the defendant <u>DID</u> act pursuant to a general overall plan.

(CT 694.) The record supports the inference that the jury thoughtfully considered the issue of whether Petitioner's actions constituted an overall plan or scheme because the jury submitted a note to the trial judge during deliberations seeking a definition of the term "act pursuant to a general over all plan." (CT 686.)[5]

"Factual determinations by state courts are presumed correct

---

[5] The Court responded: "There is no legal definition of an "act pursuant to a general over all plan." [¶] This is a question of fact for the jury to decide based on all the evidence and based on the common meaning of the words used in the phrase." (CT 687.)

10

absent clear and convincing evidence to the contrary." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003); 28 U.S.C. § 2254(e)(1). A state court's decision "based on a factual determination will not be overturned on factual grounds unless [it is] objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Id.</u>; 28 U.S.C. § 2254(d)(2).

The record in Petitioner's case plainly reflects that the jury made an objectively reasonable finding that Petitioner's acts of theft and fraud against Dr. Richley were motivated by a single intention, impulse, and plan. The evidence showed that Petitioner intended to steal from Dr. Richley's business accounts for her own use. She did so using the access she gained while posing as a legitimate accountant. Her plan of thievery continued through her final act of theft from Dr. Richley when she fraudulently made use of his Bank of America account on August 11, 1995. Far from appearing unreasonable, the jury's conclusion is completely supported by the evidence presented at Petitioner's trial.

### 2. The application of California's statute of limitations laws to the factual determination made by the trial court

The trial court having reasonably found that Petitioner acted pursuant to a general overall plan (which concluded on August 11, 1995), the state court did not err in finding that the trial court correctly applied the state statute of limitations for grand theft. There is no dispute that a four-year statute of limitations was applicable in Petitioner's case. (<u>See</u> CA Penal Code §§ 801.5 & 803(c).) The "completion of the offense" was August 11, 1995, as found by the trial court. Because Counts 1

and 2 against Petitioner were filed on August 9, 1999, they were brought within the applicable statute of limitations, and Petitioner was properly tried on those counts.

Accordingly, this Court finds that Petitioner's claim that California's statute of limitations should have precluded the prosecution of Counts 1 and 2 against her should be DENIED.

### C. **Petitioner has abandoned her claim of ineffective assistance of appellate counsel.**

Petitioner initially raised a claim that she was denied effective assistance of counsel on appeal when retained attorney Elizabeth A. Barranco failed to file a petition for review in the California Supreme Court on her behalf. (Doc. No. 1 at 5.) Respondent, in her Answer to the Petition, argued that the claim is moot because Petitioner's new appellate counsel raised the claim in the California Supreme Court in a petition for writ of habeas corpus. (Doc. No. 26 at 11; Resp.'s Lodgments 5-6.) In her Traverse, Petitioner did not refute Respondent's argument, and she appears now to have abandoned the claim. (Doc. No. 30.)[6]

Because Petitioner has now abandoned her ineffective assistance of appellate counsel claim, it should be DENIED as moot.[7]

---

[6] "The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceedings, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248.

[7] Moreover, although the Court does not consider the merits of Petitioner's ineffective assistance of counsel claim now that it has been abandoned, the Court notes that she previously benefitted from raising that claim. This Court found that the one-year statute of limitations applicable to habeas corpus petitions was equitably tolled for a period of 70 days due to appellate counsel's "egregious conduct in assuring Petitioner on more than one occasion that she intended to

## V. Recommendation

After a thorough review of the record in this matter, the undersigned magistrate judge finds that Petitioner has not shown that he is entitled to federal habeas relief under the applicable legal standards. Therefore, the undersigned magistrate judge hereby recommends that the Petition be **DENIED WITH PREJUDICE** and that judgment be entered accordingly.

This Report and Recommendation is submitted to the Honorable Barry Ted Moskowitz, United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than **April 2, 2007**, any party may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be served and filed no later than **April 16, 2007**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: March 2, 2007

_____
Jan M. Adler
U.S. Magistrate Judge

---

file the petition for review and thereafter failing to do so." (Doc. No. 20 at 8.) This period of equitable tolling rendered this federal Petition timely filed.